Next case is Emergency Tech v. PNM Resources, number 2007-1247, Mr. Callahan, whenever you are ready. Morning, your honors. May it please the court. Emergency appeals from the district court's decision. In our view, the district court misconstrued one of the two claims it interpreted and misapplied the facts so as to find no genuine issue of material fact as to the term that the district court properly interpreted, in our view, customer invoice account number. That misapplication was both legal in that the district court read in an ordinal requirement for how things take place in the application of the claims, and it was factual because it ignored evidence coming right from the defendants below, the appellees, description of their own accused system. As to the first issue, the misapplication, in our view, misinterpretation of the term directly, I think although this case was obviously not available at briefing, a case that came down from this court last week, the Helbecks v. Sensormatic case, is instructive because in our view it describes, although it's factually different, it describes what happened here, which is the district court selected and viewed some comments made in the prosecution history and sort of took them for what they were, looked at them in isolation rather than in connection with a close initial look at the specification and a concept of the entire record of the prosecution history. You're not saying that the prosecution history cannot be used to make a determination in claim construction? Absolutely not, your honor. The prosecution history is relevant. In our view, the reason that I bring up the Helbecks court is that the court there said because there is a potential for ambiguity in the prosecution history, which is essentially a negotiation between parties over what the claims will be, it lacks frequently the clarity of the specification and is less useful for claim construction purposes. Here, what was I believe the way the district court reached its conclusion. The district court was under the impression that somehow the term directly popped into the mix. The question here is whether directly includes an agent or doesn't include an agent, right? I think that's accurate, your honor, yes. Whether, to be more specific in terms of the intrinsic record, whether directly, when the patentee says in column one of the patent, the very opening paragraph of the patent, when the patentee says in the intrinsic specification, I want something that operates directly, as distinguished from some of the prior art which is problematic for various reasons. You say that it does include an agent. And then in paragraph eight says... No, no, but just the answer is yes, it does include an agent. Yes, it does in our view. Now, how am I supposed to know whether the word directly does or does not include an agent? What do I find in the intrinsic record here that tells me the answer to that question? Two things in my view, your honor. The first is, in paragraph, in column one of the patent, we know that the patentee has in mind that his invention will operate directly because he says so. He says, that's why I'm different than the prior art. In paragraph eight, in the same specification, the patentee who has said his invention ought to operate directly says, the best way to do that, by the way, if you are a big invoicer, say a department store, is to offload this and have it outsourced, have somebody do it for you, on your behalf, for your benefit. I thought you were also relying on the HIT patent and its reference to the word directly. That's the second point, your honor. The second point is that directly, the claims initially say that the invoice, that what's taking place should go from the invoicer to the customer. From to. Which most people, I think, would understand as, I take something from me and I hand it to you. But how does the HILT patent seem to use the word directly to include the agent of a bank? The HILT patent does. Now, what indicates that the patentee here borrowed the word directly from the HILT patent and used it in the same sense? There is nothing in the prosecution history that says that expressly, your honor. However, we know that HILT is the reference they were trying to get over. So HILT is what the patent examiners held up and said, you can't get your patent because of HILT. HILT describes itself, HILT says directly is not good. HILT doesn't like directly. HILT says we should have one central place, what HILT calls in column 10, lines 35 through 45, a bill payment network. This is the third party, if you will. A bill payment network whereby all different customers and all different kinds of invoicers will agree to a standard set of protocols. Everybody will put their stuff into that system and it will arrange for this stuff to happen. That is what the patentee is trying to get over. And although there was no, to answer your question, your honor, although there was no express statement incorporating HILT's discussion of when we say bank, we don't just mean bank. We mean bank and of course anybody who is doing the bank's bidding. There is no express statement of that, but I think it is implied in the fact that HILT was what the patentee was trying to get over. More to the point, your honors, directly, the addition of directly, instead of saying from the invoicer to the customer, from the invoicer directly to the customer, is not what moved the needle with the patent examiner. Directly goes into the claims and the patent examiner says, okay, I understand the distinction now. I understand how you are differentiating yourself from HILT using directly. I get it. But, says the patent examiner, my hang up now is that I don't think you are patentably different than HILT. And they go back and forth some more. And as we point out in our briefs, what happens... It's true that in order to distinguish HILT, it wasn't necessary to exclude agents of the invoice, right? Absolutely, your honor. But that still, it seems to me, doesn't answer the question of what was meant by the addition of the word directly. Because even whether or not the addition of the word directly as including or excluding an agent was necessary to distinguish HILT, we still have to ask what was meant by the amendment. We can't define the amendment simply by what was necessary to distinguish HILT, right? That's fair, your honor. And so, what we would say there is we would say directly doesn't appear in this patent, in the intrinsic record for the first time in the prosecution history. Directly is in the patent from the word go. It's in column one. Well fine, but how do I know what it means? In column eight, we know that it cannot, that directly cannot preclude the use of an agent. Because if it did, it wouldn't, the specification itself would be internally inconsistent on one hand. The problem with that is that the reference in column eight is to a different function than the one we're dealing with. Column eight doesn't deal with the transmission of the payment instructions from the customer to the invoicer. Your honor, respectfully, I think that it does. Column eight of the patent, in the record at 837, says the perverted body anticipates that an invoicer may choose to outsource web server hosting or web server and remittance processing. Remittance processing is what's going on here. So, and if you look at the specification in columns five and six and seven, the web server hosting and the remittance processing is precisely what is being described in the body of the specification. What about the rest of that paragraph? That's column eight, lines 30, beginning with the although. Yes, your honor. What about that, the last phrase, would be provided so that the customer would not normally be aware that the invoicer was not actually operating the product directly? That's correct, your honor. He says, we want you to do this in a way where the customer feels like they are having a direct relationship with you, although they are not. And not through a third party. Not through an independent third party, but through somebody who is outsourcing the very things they talk about on behalf of the person actually sending the invoice. Outsourcing to an agent? Outsourcing to... As Judge Dug pointed out, or an independent contractor? Well, it's someone, an entity, who is performing those functions on behalf of the invoicer, which is precisely, was precisely the factual case in this instance. But even accepting that, the problem, as I think Judge Garza is pointing out, is that the end of that sentence seems to suggest that where you have somebody else operating the thing for you, it's not being done directly. Well, what it says is that it's operated in such a fashion, the service is provided to the customers in such a fashion, that they're not aware that the invoicer isn't operating the product directly. They're not the ones sitting, in other words, it's not an employee of the invoicer sitting at the web server, programming it, or plugging it in, or monitoring it. But why doesn't that suggest the use of the term directly that excludes a situation where you're having somebody else do it on your behalf? Because in the claims, your honor, the claims are talking about an electronic invoicing and payment system, right? They're talking about the system, not a product that is providing that system or providing that service. I mean, it just, in our view, your honor, is internally inconsistent to say on one hand, my invention is directly, and the preferred way of doing it is to exclude a direct system. It just is internally inconsistent. And when one then looks at HILT and says, what was it ultimately that got the patent office over the hump, if you will? What was it that got the patent office to understand not only that the patented invention is different, but patentably different from HILT? What that was, was this explanation from an extrinsic source that was provided to the patent office and said, here's the difference. It's the difference between a consolidator model and this portal model, the consolidator model being likened to HILT and the portal model being likened to the patented invention. And that is what finally got the patent office to say, okay, I now understand not only why these are distinct from one another, but why the patented or the claimed invention is patentably distinct over the HILT reference. Mr. Callahan, do you want to save some of your rebuttal time? Yes, your honor, I do. Thank you. You can add two minutes to Mr. Callahan's rebuttal time. Give Mr. Sayers also the additional two minutes. Thank you. Good morning, your honors, and may it please the court. I think this case is about claim construction, and I think the claim construction that the court entered in this case is appropriate. If, in fact, they were taking the word directly from the HILT patent and using the word directly in the same sense as the HILT patent, you'd have a real problem, wouldn't you? No, your honor, I don't believe so. No? Why not? Because I think that the HILT patent uses directly just like this patent uses directly. Directly means there's no intervening party between the two parties doing a disability patent. But the HILT patent does seem to use directly to refer to a situation where an agent is involved. The patent doesn't use the word directly in the same sentence that it uses agent. It says dealing directly between a bank and a customer, and then it later says in an unrelated paragraph that the bank can use agents. The fundamental problem we have is, I think your honors have already pointed out, this is a discussion that is very interesting academically, but it's not what's in the file wrapper. I mean, you can't read this file wrapper and come to the conclusions that are being asked. But the word directly was added in order to distinguish from HILT. Pardon? The word directly to the claims was added in order to distinguish from HILT. The word directly, the patent examiner, when you read each time, he rejects them. He says, you're just like figure one in your own disclosures. Figure one being a third party. Which is a priori. Which is priori, which is a third party service provider. And so he said, I'm not going to let you just have a broad claim, which is the claim that was originally drafted, didn't have directly. I'm going to make it, you've got to make it clear that the invoicer and the customer are one on one. There's no one in between. And that's the term that he chose to use, was directly. But he didn't discuss the agency question. There was no discussion in the record of agency. That is correct, your honor. Which I think is dispositive. How can that be dispositive? Well, your honor, the term directly was used as a way of saying, there's nobody in the middle. An agent would be someone in the middle. So I think it was discussed. You don't think that the standing alone that the word directly can be ambiguous as to whether it means to the principal, or to the principal, or the agent? I think in this situation, it's not. No, no, but that's not my question. Is it general matter? Taking the word directly. And if you're saying, I want to give it to X directly, it's ambiguous as to whether that means to X as principal, or whether it includes X as agents. It's at least ambiguous, isn't it? Your honor, I would admit that in a hypothetical sense, it's ambiguous. But in claim construction, we work with a record. OK, so the question then is how to figure it out from the record. Certainly, it seems to me that they're correct. That in the HILT reference, the term directly, it says directly to the bank. And then further down in the same column, it says that the bank includes the bank's agents, right? That's not what was discussed in the record, your honor. No, it wasn't discussed. But we've had cases where we've looked to prior art for the definition of terms. And if, in fact, they were borrowing the word directly from the HILT patent, and I'm not convinced that they were, that's a separate question. But if they were borrowing the term directly from the HILT patent, it does seem to, HILT does seem to use directly to refer both to the bank and the bank's agents, right? That's what HILT says. Yes, your honor. But that's not what Mr. Neely said. How did Mr. Neely distinguish his situation from HILT? OK. What he said was, is I'm going to add the word directly. That's what he and the examiner agreed was going to be the term to overcome HILT. And then there's the typical give and take back and forth. And ultimately, he convinced the examiner that directly was enough to get over HILT. And what you also have to remember is there's this third party service provider figure in the front of the patent. And ultimately, what this judge did was he went to the patent at issue, he looked at figure one, and he said, well, whatever this patent term directly means, it can't include a third party service provider. That's clear. And that's what the ultimate construction is that we're talking about. Yeah, but then the question is what's meant by a third party service provider? Is an agent a third party service provider or not? Wait, wait, wait. If you look at the law of agency and the restatement of agency, the restatement seems to distinguish a third party from an agent. It seems to suggest that the term third party in the context of agency does not include an agent. It's different from the agent. Your Honor, these are not arguments that you can pull from the file wrapper. So I keep going back to that. And I think what ultimately we come down to, to affirm the judgment in this case, is the admission that was made by the other side that whatever third party service provider is, that's what we were using. We went through a process of discovery, and they didn't deny that the Bill Matrix option that's the vended solution is a third party service provider. But that is independent of the bank or otherwise? It's absolutely independent of the bank. How do we know that? How do we know that from the specification? This is a fact question as to what they do in the real world, not what's in the specification. But how do we then determine what directly means? If directly was included to obviate the prior art, which is HILT? Your Honor, HILT is really nothing more than figure one. When you look at figure one, you see someone standing between the customer and the invoicer. That's what figure one is. So it shows a third party service provider. A third party service provider who receives from the invoicer an invoice that is then transmitted electronically to the customer. So is the third party service provider in figure one an agent? They're acting on behalf of the invoicer. So why wouldn't they be an agent? I ask rhetorically. But it's a real question. But you can't ingress. But the law of agency doesn't suggest that everybody who does work for somebody else is an agent. There are tests as to agency. And it involves proof of control and things like that. Your Honor, let me maybe change focus. And you were sort of talking to me packing focus. But I think that the word agency is not the claim construction advocated by Emergis in this case. That's not what they asked the court to say. I mean, we're not fighting a battle now that we fought below. Agency was not the concept that they were talking about. They wanted an independent third party. That's the term we fought below. And now, since they lost that, they're coming up with agency as a new argument. They've come up with several new arguments in this case to try and avoid the admissions that they had to make on the facts. And that's what ultimately is frustrating about this case is you can't pin down what their argument is about claim construction. I mean, I would challenge Mr. Callahan to show you where in the record he said that the agent is the claim term that he wants to be engrafted on to direct. It's not in the record. So we're fighting a hypothetical battle that wasn't fought below. And I don't think that's appropriate. I mean, there's all kinds of law around. You can't make up new constructions on appeal. And that's basically what we have here. Does this sort of suggest that you're not confident of your argument on the agency? I'm very confident of agency, Your Honor. I don't think we're an agent. I mean, we put in evidence from P&M's people that we neither control nor direct the behavior of the bill matrix option. Where's the evidence that you don't control? It's on page A2 of the record. A2? A2. If you look at the judge's opinion, right at the bottom of the page, defendants do not operate the bill matrix website nor control any aspect of the bill matrix website. That was an admitted fact. So on A2, it's about the fourth, fifth line from the bottom. Well, that's not quite the same thing as saying they don't control bill matrix, is it? Your Honor, it says they don't control any aspect of the bill matrix website, which is the accused instrumentality. The other thing I would say, Your Honor, if he had asked, if he put agent as the argument before the summary judgment process had started, if we knew that was the task we had in front of us, we would have put all this agency facts into the record. But that's not what the battle we were fighting. So again, I think it's wholly unfair to go down and are you independent or are you independent as the theory. That's the claim construction they chose. And then to twist that into something else. And that's, in essence, what we have here. I mean, if you decide this is an agency issue and needs to be remanded, we'll just be back down there saying we don't meet the agency issues. I don't have all the record evidence to develop that because that's not what we were fighting about. And again, in a claim construction process, people have to make decisions about what their claims are. He chose the word independent and that's what the judge rejected because there's nothing in the record to support independent. Nothing. There's nothing in this record to support agent. In the direct record, you have to go off the territory into a patent that's cited and talked about, but it's in passages that no one discussed during the prosecution history. He's making it up. He simply is just creating out of whole cloth this agency argument. It's not what the examiner said was his reason for allowance. The examiner didn't say, well, I'm going to turn directly into agent. And there's a nice pithy quote that you can cite. I guess we wouldn't be here if that had happened. I'm sure. Well, we might still be here because he may have come up with another argument. But, Your Honor, I'd submit that this whole agent argument is improper on appeal because it wasn't raised below. It's not what his claim construction was. And so that ought to be disposed of. I mean, this court's pretty harsh on people who try and change the language on appeal. And I submit that's what this case is on that issue. I would like to just spend a couple of moments. But you're not saying that you're practicing the prior art. Therefore, you don't infringe the patent. We are saying that we are almost, yes, we are identical to figure one. So at that level, which he said was not his invention. Is that your defense, that you're practicing the prior art? We are practicing a disclaimed feature of the invention. So in that sense, I am saying, yes, we're practicing the prior art. The record is replete with references. We're practicing the prior art. This seems to be quite different from the prior art. They didn't need to disclaim agency in order to distinguish the prior art, did they? What they needed to get around was a middleman. What's the answer to that question? Did they need to disclaim agency to get around the prior art? Yes. Really? How so? If you look at the prior art, it didn't have anything to do with sending it to the invoicer or the invoicer's agent. It certainly did, Your Honor. Figure one is an agent. You could fit into the word agency all the characteristics of figure one of that patent. There's someone who is entrusted with confidential information, invoice information. They are an agent acting on behalf of the principal, the invoicer. They get information. They go to a customer to obtain, again, confidential type information, payment information. I don't see why figure one doesn't meet the standards of agency. Isn't it a better argument that it's not an agency with an independent contractor relationship? It's that, too. I mean, Your Honor, it's not clear from the way figure one is described as to whether there's an independent contractor, agency, outsourced vendor. That's not what is being discussed in the patent. What's being discussed in the patent is there's not a middleman. There's no one in between the two parties doing the transaction. That's true, but that doesn't tell us whether an agent is included or not included. I think it does, and because of the way that the patent has been drafted and that the language that's used, the word directly, has a pretty understood meaning. There's no one in the middle, and that's basically the position that we would say defines the term. So whether it's an agent or an independent contractor? Or an outsourced vendor or any of those things would not be a direct relationship. Again, the prior art limits claims all the time, and that's basically what had to be gotten around here, is that there was an independent agent outsourced something in the middle between the two parties, and column one describes that as cumbersome. We've got to get rid of the middleman is basically what the prosecution history and specification describe. You've just got to eliminate the middleman and go direct. Indeed, when you look at the rest of the columns of the patent, columns two to eight, there's an intricate description of a direct relationship customer invoice are sending back and forth. And there's no one in the middle of that relationship. It's only the stray tagline at the end that emerges any prospect of recovery here. I do want to discuss, if the court has any questions, the customer invoice account number, which is another issue that we believe needs to be affirmed. But we'd also like a rewriting of the claim language, as we've indicated in our briefs. Again, I don't know if there's any. A rewriting of the claim language or a rewriting of the construction? The constructions. Pardon me, Your Honor. Pardon me, Your Honor. And again, that's been articulated in our briefs. Why don't you go ahead, and you have two minutes to do that. Your Honor, I think that this is, again, a claim construction issue, and it boils down, as we've said in our brief, to looking at what it is that that term means. It's an ambiguous term. Customer invoice account number. It's got three basic concepts going on, and what's the number that gets used. I think when you apply construction law to that term, you end up with it meaning invoice number. And there's basically three points I would make. One, when you look at the claim itself, the claim says it's an invoice, electronic invoicing system. So it is talking about invoices in the context of what's going on. It's an automated electronic invoicing and payment system. So you're submitting invoices is the natural reading of that phrase. Second thing, when the examiner first saw the term invoice account number, he said, I don't know what that means. He went, he said, that's an ambiguous term. It doesn't have meaning to me. Tell me what that means. And in two places in the patent, the examiner was told invoice account number means invoice number, customer invoice number. So the patentee defined this ambiguous term as an invoice number. And then finally, when the examiner allowed the claim, he indicated that he found there was nothing in the art that would indicate invoice numbers being submitted by customers. So from a classic claim construction process, looking at the claims, the spec and the prosecution history, that's the conclusion he draws this ambiguous term. We do believe we prevail under the court's construction because again, under the process that was employed in this case, I'm sorry, the process that was claimed in this case, there's a request for data request for a customer invoice account number. And in response to that request, something is given by the customer. And in this case, we give the customers give nothing that correlates with either the court's construction or the construction that we propose. So you're basically adopting the analysis in Kansas? Well, we made in some sense, yes, but we made our own argument. The judge made his own decision. Our judge actually said he wasn't going to read the Kansas decision. So he made his own decision. We tried to get him to look at it. He said, no, I'm not going to read it. So he made his own decision. I see my time is up. Any more questions? Thank you, Your Honors. Thank you. Judge Gallivan, Your Honor. I'm going to use my time, Your Honor, to address quickly the customer invoice account number issue on the facts. The reasons we stated in our brief, the reasons we think Judge Smith stated in his opinion, we believe his claim interpretation is correct. I think it was misapplied. Judge Smith did two things in our view, required that there be a definite sequence of events that is argued by PNM in their brief, page 53, and it was today. What we would rest on is you need to look no farther than page 28, the description of they talk about the customer logging in and registering her account. So you go, you get your password, you register your account. Anybody that's worked and paid bills online is familiar with that. The system then associates the web account with an account number. So it knows that when I'm Dave C and 1234, password I'm not supposed to use, it knows that when I log in on that, this is my electric bill. This is the electric bill account that associated with Dave C 1234 password. And it knows that based on the account you're accessing. So in our view, under the district court's claim interpretation, which says you must have a number or another identifier associated with the customer's account. Those are disjunctive. You can either send a number or you can send some other identifier associated with the customer's account when you send your bill payment instructions. Or does the invoice have its own numbers so that if you get two or three invoices, they have separate invoice numbers? The invoice may, but under the district court's interpretation, the invoice account number just means a number or some other identifier. One of those two categories of things that is associated with the customer's account. And it makes sense. So that as you send, you're sending your payment instructions over, the system knows what to do with it. Now there is no question or there is at a minimum a factual issue as to whether the system as described in plaintiff's own brief at page 28, where you register your account and that account is forever after, associated with the name and the password that you've chosen. Whether when you send wire instructions over, you say, pay $250 on my electric bill for my visa, whether the system knows what account to apply that to. There is at a minimum a factual issue present based on the district court's interpretation and the factual evidence coming from P&M. What's the relationship between the first and the second issue? If you lose on the first issue, the second issue is moot, right? That's accurate. Right. And what about the other way around? If we lose, I'm sorry. If you lose on the second issue, does the first issue become moot? I better understand what's first issue and second issue. Well, the first issue is the directly issue and the second issue is the customer invoice account number. I'm sorry, Your Honor. Actually, those are both independently important because there are two different systems that are accused of infringement. One system that is accused of infringement is wholly internal. So as to that system, they only have the directly argument. And if they lose on directly as to the internal system, we would go back. As to the other, they made both arguments. As to the vended system, they made both arguments. So we would need to prevail for remand as to that system. We would need to prevail on both. Okay. I understand what you're saying. Thank you. I have one question. I'd like to go back to the directly issue. If I am in this business and I'm reading your patent, how do I know what is there in the history or the specifications or any place that would alert me to the idea that if I add in an agent, I don't infringe? I think the clearest evidence of that, there are two places in the record, Your Honor. The most clear evidence is in column A where the patentee says, the way I want you to practice my invention, the best way to do it, the preferred embodiment of my direct invention is to outsource this stuff to somebody that does it more efficiently. That's the best, most intrinsic piece of evidence. The next best, perhaps more clear, is the article that was cited to the examiner that finally got the examiner to issue the claims that makes it clear in sort of more lay terms what the two different types of technologies are. One is a consolidator, central place, lots of different billers, lots of different customers. The other is customer biller and that biller may or may not utilize a vendor to perform those activities. Thank you, Your Honor. I will see you again very shortly.